---

**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

---

**ANGEL RODRIGUEZ,**

　　　　　　　　**Petitioner,**

　　**v.**

**UNITED STATES OF AMERICA,**

　　　　　　　　**Respondent.**

_____

**1:13-cv-00034**
**1:04-cr-00105-3**

**TO:**　　Angel Rodriguez, *Pro Se*, No. 25504-056
　　　　　FCI Bennettsville
　　　　　**Federal Correctional Institution**
　　　　　P.O. Box 52020
　　　　　**Bennettsville, SC 29512**
　　　　　Harry Cyril Wallace, Jr., Esq., SAUSA

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court upon the Order (ECF No. 864) of Chief Judge Wilma A. Lewis in Criminal No. 04-00105-3 referring Petitioner Angel Rodriguez's *pro se* Motion under 28 U.S.C. § 2255[1] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 746) to the undersigned for a Report and Recommendation. The government filed a response in opposition to the motion to which the petitioner filed a reply. (ECF Nos. 826 and 833). Upon consideration of the pleadings and for the reasons that follow, it is recommended that Rodriguez's motion be denied.

---

[1] Citations to the United States Code are to the electronic version that appears in Lexis.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 2

## I. RELEVANT BACKGROUND

On April 17, 2004, Angel Rodriguez and three others engaged in a series of crimes including attempted robbery, car-jacking, and murder.[2] On May 31, 2006, a grand jury returned an 11-count third superseding indictment against the four named defendants, including Angel Rodriguez. Trial commenced on January 10, 2007, and on February 6, 2007, the jury convicted all four defendants on all charges. After the Court entered judgments of acquittal on Counts 3 and 4,[3] Rodriguez was sentenced to life imprisonment on Count 6, causing the death of a person through the use of a firearm. Amended Judgment (ECF No. 685), entered January 30, 2009.[4]

Rodriguez and his co-defendants timely appealed. The Third Circuit Court of Appeals affirmed the convictions. *United States v. Berrios*, 676 F. 3d 118 (3d Cir. 2012). Rodriguez did not petition for writ of certiorari to the United States Supreme Court. He then timely filed this Section 2255 motion to vacate, docketed on April 3, 2013. (ECF No. 746). In his motion, Rodriguez asserts seven grounds for post-conviction relief.

## II. LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the

---

[2] A full recital of the offense conduct can be found at 1:04-cr-00105, ECF No. 826, pages 4-22 or in the government's brief on direct appeal.

[3] *See United States v. Berrios*, Crim. No. 2004/0105, 2008 WL 2704884 (D.V.I. July 8, 2008).

[4] Rodriguez received twenty years on Count 1, twenty years on Count 2, fifteen years on Count 8, twenty-five years on Count 9, fifteen years on Count 10, and twenty-five years on Count 11. The sentences in Counts 1, 2, and 8 were ordered to run consecutively to each other and the federal counts were ordered to be served before the local counts. (ECF No. 685) at 3.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 3

Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). As the *Davis* Court notes, "[H]istory makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). However, not every asserted error of law can be raised in a § 2255 motion. *Id.* at 346. The remedy is intended only where the "claimed error of law was a 'fundamental defect which inherently results in a complete miscarriage of justice' and [where] '(i)t . . . present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 428 (1962) (internal quotation marks omitted)).

A § 2255 petition is not a substitute for an appeal. *Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). Thus, the general rule is that a petitioner "has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge*, 554 F.3d at 379 (citation omitted); *Massaro v. United States*, 538 U.S. 500, 504 (2003). Moreover, a 2255 petition may not "be used to relitigate matters decided adversely on appeal." *Government of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) (citation omitted). However, a petitioner properly raises ineffective assistance of counsel arguments under § 2255 rather than on direct appeal. *See, e.g., Massaro*, 538 U.S. at 504 (explaining it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013) ("It is well-settled that this

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 4

Court ordinarily does not review claims of ineffective assistance of counsel on direct

appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)).

     To succeed on an ineffective assistance of trial counsel claim a movant must show

both that 1.) counsel's representation was deficient and that 2.) the deficient performance

"prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Regarding the

"deficient" prong, a movant must demonstrate that counsel "made errors so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. As for the prejudice

prong, a movant must show "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.[5]

     The movant bears the burden of establishing his ineffective assistance of counsel

claims by a preponderance of the evidence. *United States v. Serrano,* 798 F. Supp. 2d 634,

641 (E.D. Pa. 2011) (citing *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980)). A

movant "must identify the acts or omissions of counsel that are alleged not to have been the

result of reasonable professional judgment. The court must then determine whether, in

light of the circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance." *Strickland*, 466 U.S. at 690.  Judicial scrutiny of

counsel's performance is highly deferential, and a petitioner must overcome a "strong

presumption" that counsel's strategy and tactics "fall[ ] within the wide range of reasonable

---

[5] A court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry. *Strickland,* 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 5

professional assistance." *Id.* at 689. In addition, "[a]n error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment. . . . Accordingly, any deficiencies in

counsel's performance must be prejudicial to the defense in order to constitute ineffective

assistance under the Constitution." *Id.* at 691-92. Thus, "[s]urmounting *Strickland's* high bar

is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).

"A court may dismiss a motion to vacate without . . . holding an evidentiary hearing

when it is clear from both the motion and the record that the movant is not entitled to

relief." *United States v. Delbridge*, 504 F. App'x 145, 148 (3d Cir. 2012); 28 U.S.C. § 2255(b).

Further, a court may decide a § 2255 "motion without requiring the production of the

prisoner at the hearing." 28 U.S.C. § 2255(c).

A petitioner's *pro se* pleading is construed liberally. *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "pro se litigants

still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay

Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

### Count 1-1: Counsel failed to move for change of venue

Rodriguez alleges that he was denied effective assistance of counsel as a result of his

trial counsel's failure to move for a change of venue; stating that counsel should have

moved for a change of venue due to the extensive media coverage prior to the grand jury

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 6

proceedings and leading up to the trial. Because St. Croix is essentially a small town and the

Virgin Islands are in a confined geographic area with a total population of just over 100,000

people, Rodriguez argues, prejudice must be presumed due to the intense media coverage

of the robbery; the shooting, the death, and the burial of Officer Chapman; and the arrests

of the four co-defendants. The government points out that the crime was committed on St.

Croix and the grand jury was convened on St. Thomas. Also, that the crimes occurred in

April of 2004 and the trial did not begin until January of 2007. Rodriguez in turn highlights

a question asked of the jurors: "how many of you have heard of this particular case" and

tells the court that in response, every potential juror raised their card. (ECF No. 746) at 12.

The government responds that the court did not pose this question to the 86-member

venire en masse. And, that the twenty-three potential jurors who indicated they had heard

of the case and could not be fair were excused. (ECF No. 826) at 26-27. The government

also responds that none of the defense counsel for the four co-defendants objected to the

pre-trial publicity nor moved for a change of venue, nor does the record show the "number

and nature of news reports and news articles . . . in the U.S. Virgin Islands in general and St.

Croix in particular." *Id*. at 27. Replying, Rodriguez submits several relevant news clippings.

The clippings submitted by Rodriguez show objective and factual reporting. The

dates the reports were published and the content of the articles show that the reporting

was not gratuitous or showy but rather, the work of trained journalists filing news reports

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 7

in response to events—the robbery; the officer's injury, subsequent death, and funeral;

rumors of police obstruction; and the arrest of a suspect.

Presumed prejudice is more than exposure to the case or knowledge of the case that

is garnered from media outlets. Expecting jury members to be "totally oblivious to events

unfolding from day to day" is unreasonable. *Martin v. Warden, Huntingdon State*

*Correctional Institution*, 653 F.2d 799, 806 (3d Cir. 1981). The "relevant question is not

whether the community remembered the case, but whether the jurors at [the] trial had

such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton*

*v. Yount*, 467 U.S. 1025, 1035 (1984).

The publicity surrounding the crime and leading up to Rodriguez's trial does not

equal "the spectacle of [the defendant] personally confessing in detail to the crimes with

which he was later to be charged" as found in *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963);

the coverage preceding the Rodriguez trial does not rival a live broadcast of the proceeding

and "publicity totaling 11 volumes of press clippings" giving the case national notoriety,

including the defendant's likeness gracing the cover of Time magazine, as in *Estes v. Texas*,

381 U.S. 532 (1965); or where the defendant was examined without counsel in a televised

three-day inquest in front of spectators, the press was seated inside the bar, the names and

addresses of prospective jurors were published in newspapers, and the trial began shortly

before a "hotly contested election at which both [the] Chief Prosecutor [ ] and [the trial

judge] were candidates for judgeships" as in  *Sheppard v. Maxwell*, 384 U.S. 333, 354

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 8

(1966). In these cases, the Supreme Court found that the defendants had been prejudiced

by pervasive publicity. Tellingly, the publicity at issue here is also not nearly as impactful as

the "widely felt sense of victimhood among Houstonians and the voluminous adverse

publicity" that surrounded the Enron-related *Skilling v. United States*, 561 U.S. 358, 431

(2010), where, in part because "over four years elapsed between Enron's bankruptcy and

Skilling's trial," the Supreme Court held that the defendant failed to establish that pretrial

publicity prevented him from obtaining fair trial. *Id.* at 361.

"Where media or other community reaction to a crime or a defendant engenders an

atmosphere so hostile and pervasive as to preclude a rational trial process, a court

reviewing for constitutional error will presume prejudice to the defendant without

reference to an examination of the attitudes of those who served as the defendant's jurors."

*Rock v. Zimmerman*, 959 F.2d 1237, 1252 (3d Cir. 1992). Rodriguez's presumption that due

to media coverage, no Virgin Islands juror could be impartial in his case is untenable. Even

if we believe that 100 percent of the jurors polled in *voir dire* admitted to having heard of

the case, "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues

involved." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). The twenty-three potential Rodriguez-

trial jurors who then admitted they didn't believe they could be impartial, were excused.

Also, the people of St. Croix were not subjected to unrelenting and extensive publicity

immediately prior to the trial. The pre-trial news reports did not unfairly portray

Rodriguez or his co-defendants in a negative light but were factual and objectively

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 9

reported. The reporting was not sensational nor inflammatory. It was not voluminous, constant, nor prolonged. *See Hetzel v. Lamas*, 630 F. Supp. 2d 563 (E.D. Pa. June 23, 2009). Accordingly, Rodriguez has failed to establish that counsel erred by not moving for a change of venue.

**Count 1-2: Court failed to excuse biased juror**

Rodriguez alleges that because the Court seated a "biased" juror, he was denied a fair trial. He also alleges that he was denied effective assistance of counsel because his trial counsel failed to object to the "biased" juror. However, as the government explains in its response, the court reporter has verified that the trial transcript contains a typographical error. (ECF No. 826) at 25-26.

Juror Number 6 was not excused for bias and then also seated. The court reporter, Valerie Lawrence, attests that Juror Number 26 was the juror who indicated s/he could not be impartial and was excused for cause, not Juror Number 6, who was selected as a juror for trial. *See* Affidavit of Valerie Lawrence, dated July 25, 2014, filed with Response at ECF No. 826 as Attachment #2. Based upon the court reporter's affidavit, the Court finds that Juror Number 6 was properly selected and that a biased juror did not preside as a member of the jury.

**Count 2: Counsel failed to file writ**

Defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982); Supreme Court

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 10

Rule 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion.");

*Thomas v. United States*, 2015 U.S. Dist. LEXIS 189680 (D.V.I. December 8, 2015). "[W]here

there is no constitutional right to counsel there can be no deprivation of effective

assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Because there is no right to

counsel for a certiorari petition, a defendant cannot raise an ineffective assistance of

counsel claim based on a failure to file such a petition. Thus, this claim is meritless.

**Count 3: Court excluded the public during jury instructions**

Rodriguez contends that counsel was ineffective for failing to object to the locking of

the courtroom doors while instructions were read to the jury. The record shows that:

1.  The jury arrived in the courtroom at 10:00 am (page 7)

2.  The judge notified counsel that the doors had been locked (page 28)

3.  The court took a break from 10:50-11:15 am (page 38)

4.  The jury charge concluded at 12:00 noon (page 67).

Trial Transcript, February 1, 2007. Rodriguez states that the doors were locked from 9:50

am until 4:00 pm that day. The court finds no evidence in the record to support this claim.

As shown above, the transcript indicates that the doors were locked from approximately

10:00 am until 10:50 am and again from 11:15 am until noon. There is no evidence that the

courtroom was again locked when court resumed at 1:20 pm. *Id.* at 67.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 11

Rodriguez urges the Court to consider the four factors set forth in *Waller* in its

analysis.[6] *Waller v. Ga.*, 467 U.S. 39 (1984). *Waller* is distinguished from Rodriguez's case in

several important aspects. First, the *Waller* suppression hearing was closed over the

objections of counsel. None of the six attorneys in the Rodriguez trial objected to the doors

being locked during the jury instructions. Second, all members of the public were barred

from the *Waller* courtroom. There is nothing to indicate that spectators already present at

the time the Rodriguez jury instructions were read were asked to leave. There is nothing to

indicate that members of the public were not free to enter and exit the courtroom during

the twenty-five minute break. Only those hypothetical late-arriving spectators, those who

arrived after 10:00 am until 10:50 am or after 11:15 am until 12:00 noon, would have been

prevented from entering the courtroom. Third, the *Waller* courtroom was closed to all

members of the public for all seven days of the 7-day hearing. The Rodriguez courtroom

was closed only to late-arriving members of the public for one hour and thirty-five minutes

of a four-week trial.

Rodriguez furthers his argument with the proposition that, because closure of the

courtroom is structural error, prejudice is presumed and his right to a new trial is

axiomatic—because there was no notice prior to the courtroom being closed, his right to a

public trial has been violated. However, the six attorneys in Rodriguez's trial were given

---

[6] "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 511-12 (1984)).

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 12

notice, albeit brief, and had an opportunity to object. None objected. Also, in the cases

Rodriguez cites, the courtrooms were closed to all: "all spectators are excluded" -- "total

closure of a courtroom" -- "closed the courtroom entirely." (ECF No. 746) at 23.[7]

The closing during the Rodriguez case did not exclude all members of the public and,

spectators were allowed to enter and exit mid-way through the proceeding, evidence that

the court was not "closed" for the purposes of the *Waller* test. *See United States v. Scott*, 564

F.3d 34, 37 (1st Cir. 2009). Like the spectators in *Herring*, spectators to the Rodriguez trial

"had unrestricted courtroom access throughout the trial, including the jury charge, as long

as they arrived before it began" further evidence that the trial was indeed public and did

not effect a "closure" triggering Sixth Amendment review. *Herring v. Meachum*, 11 F.3d 374,

380 (2nd Cir. 1993). Having reviewed the record and considering the augments of

Rodriguez and the respondent, the Court finds that Rodriguez's Sixth Amendment

guarantee of right to a public trial was not violated. Accordingly, his counsel committed no

error.

## Count 4: Court held inappropriate *ex parte* conference with witness

An *ex parte* conference that violates the privilege of confrontation, is one which

prevents cross-examination of a witness who is being questioned. *Dowdell* v. *United States*,

---

[7] *See, e.g., Judd v. Haley*, 250 F.3d (11th Cir. 2001) (courtroom closed to all spectators over counsel's objection); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (mandatory closure of court to all spectators in certain cases); *United States ex rel. Bennett v. Rundle*, 419 F.2d 599 (3d Cir. 1969) (courtroom cleared of all persons except defendant, his counsel, Assistant District Attorney, witnesses, and court officers for the entire suppression hearing).

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 13

221 U.S. 325, 330 (1911) (the confrontation clause "was intended to prevent the conviction

of the accused upon depositions or *ex parte* affidavits, and particularly to preserve the right

of the accused to test the recollection of the witness in the exercise of the right of cross-

examination"). "[T] he presence of a defendant is a condition of due  process to the extent

that a fair and just hearing would be thwarted by his absence, and to that extent only."

*Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934).

Rodriguez claims that his rights of confrontation and due process were violated

when the trial judge met with a witness, the witness's mother, and a third party outside the

presence of counsel. The substance of the referenced *ex parte* conference is this: the

witness complained to the judge that he was being harassed by the police and that he had

also been threatened by the defendants. The witness expressed that he did not want to

testify, he could not identify the robbers, and mostly, that he was tired of being harassed by

the police. The judge told the witness that if he felt unsafe, some level of protection could

be arranged for him. At the close of the conversation the witness expressed confusion as to

when he was to come to court. The judge called the government attorneys into chambers

and briefly explained that the witness might desire protection. The witness voiced his

confusion about when he was to come to court to testify and indicated his frustration with

the entire process. The conference concluded with the prosecutors and the witness

agreeing to meet privately. Trial Transcript, January 11, 2007, pp. 50-70.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 14

Rodriguez misconstrues the witness's statements in the *ex parte* conference as "testimony."  (ECF No. 833) at 16. The *ex parte* conference, though on the record, was not a hearing. None of the witness's statements appear to be testimonial. The witness statements that Rodriguez takes issue with are that the police were harassing the witness; that the judge advised the witness to hold-off filing a complaint about the harassment until after he testified; and that the judge indicated that a judicial complaint would be fruitless in the sense that once any complaint was made about police misconduct, the ramifications were unknown and could not be controlled. (ECF No. 833) at 14-15.

Rodriguez claims that he was prejudiced by these *ex parte* statements, but he fails to show how he was prejudiced. None of the information exchanged in the conference was presented to the jury. No evidence was admitted nor were any orders issued as a result of the conference. The judge instructed the witness that if he was called to testify, he was to tell the truth and, when the witness attempted to speak about facts in the case, the judge stopped him, saying, "I don't want to know too much about the case." Trial Transcript, January 11, 2007, p. 67. The prosecutors were brought in not to question the witness but to inform the witness as to when he was expected to come to court to testify. During this conversation, the judge shared that the witness might desire protection and from there the government attorneys agreed to meet with the witness directly—to speak with him privately regarding his testimony and to address his safety concerns.[8]

---

[8] Rodriguez's fixation on the witness's complaints about police harassment is telling. It is clear his argument stems from his dissatisfaction that he was not allowed to bring this information to light in front of the jury.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 15

Rodriguez claims that his confrontation clause rights were violated because "such hearing was a stage of the trial." (ECF No. 833) at 13. However, Rodriguez's reply illustrates the opposite:

> Ms. Hernandez stated to the Judge that some kind of threats was being sent to her son, which from the transcript of such hearing shows no way the trial judge trying to elicit from [the witness] if he had in fact received such threats as falsely alleged by his Mother [ ]. [The witness] was simply telling the judge that the police was harassing him and his girlfriend trying to get him to lie and say that he saw defendants.

(ECF No. 833) at 13. A "stage of the trial" is any part of a trial in which a defendant's "substantial rights may be affected by the proceedings against him." *Snyder*, 291 U.S. at 129. The Court finds no evidence in the record that Rodriguez's life or liberty were affected by the *ex parte* conference. The record provides no evidence that the conference was a stage of the trial—testimony was not sought, evidence was not admitted, no order was issued, and nothing that was said in the conference was submitted to the jury as a result of the conference. Consequently, Rodriguez's confrontation and due process rights were not violated and his attorney committed no error.

**Count 5: Counsel failed to present medical expert at trial**

Rodriguez alleges that counsel was ineffective for failing to obtain a medical expert and for failing to cross examine the government's medical expert. Rodriguez avers that deciding to not obtain or call a defense expert and to not cross-examine the government's

---

*See* (ECF No. 746) at 25-26. It is worth noting that had the statements regarding police harassment been admitted, so too would the statements that the defendants threatened to kill the witness should he testify. It was likely to his benefit that this information was not brought before the jury.

pathologist, was "not a sound strategy or tactical decision." (ECF No. 746) at 28 and (ECF No. 833) at 18. In challenging counsel's strategy, a "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 at 698 (internal quotations omitted).

The government argues and the record shows that defense counsel strategy was not to cast doubt on the cause of death but rather, to place doubt in the juror's minds that the co-defendants were, in fact, the robbers. For example, the cross-examination of witness Rogers pointed out a disparity between how tall the witness said a defendant was and how tall the defendant actually was, witness Seeley was tested on her memory of height, skin color, and how the robbers wore their hair, and witness Browne's memory of one robber's appearance was called into question—"you described . . . the first robber . . . as having a dark Puerto Rican complexion; is that right? . . . this gentleman right here doesn't have a dark Puerto Rican complexion, does he?" Trial Transcript, January 11, 2007, pp. 45-48, 104-105, 135-137. The cross-examination of witness Jackson attempted to raise doubt as to whether the jacket one of the robbers wore was in fact a jacket seized in the investigation. Trial Transcript, January 12, 2007, pp. 19-20. Then, the cross-examination of witness Hernandez attempted to elicit testimony that Hernandez had been a suspect, and further, that he had become a suspect because Officer Chapman identified him. Trial Transcript, January 12, 2007, pp. 21-55. Next, after witness Davis testified that he heard one of the robbers say, "Troy, let we go." The defense suggested he heard, "Boy, let we go." *Id*. pp. 72-

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 17

79. Throughout the proceedings defense counsel accused the witnesses of fabricating their stories, suggested their testimony had been influenced by the police, and grilled them about discussing their statements with each other prior to making them. *Id.* at 30-33, 36-39, 72-73.

Rodriguez argues that prior to trial he asked his attorney "to get a medical expert to bring out this fact of the victim dying of pneumonia, surgical error, or some other condition that the victim received . . . due to medical neglect." (ECF No. 833) at 18. However, the government argues convincingly that this would have been futile as "there were no facts upon which counsel could have relied in presenting evidence of that nature." (ECF No. 826) at 48. Rodriguez argues further that counsel offered no reasonable excuse for failing to consult with a medical expert in making his decision as to whether pursuing this line of inquiry would have benefitted the defense. In his argument, Rodriguez relies on cases that hold that rebuttal testimony from a credible, objective expert witness would have cast serious doubt on the prosecution's case and, had the expert testified, there was a reasonable probability that the outcome would have been different.[9] The record in Rodriguez's case does not support the supposition that the testimony of a medical expert

---

[9] *Showers v. Beard*, 635 F.3d 625, 632 (3d Cir. 2011) (counsel failed to conduct a thorough investigation or understand key, undisputed facts in the record, "testimony by any of the available experts would have injected significant doubt regarding [the defendant's] guilt); *Soffar v. Dretke*, 368 F.3d 441, 473-74, 476 (5th Cir. 2004) (defense counsel offered "no acceptable justification for their failure to take the most elementary step of attempting to interview the single known eyewitness to the crime with which their client was charged . . . . [and] were deficient in not seeking out a ballistics expert when there were such readily apparent discrepancies between the ballistics evidence and the State's theory of the case"). The record in Rodriguez's case provides no evidence that testimony by any expert would have injected doubt as to the victim's cause of death nor that the government's theory relied on the pathologist's testimony as to the cause of death.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 18

would have changed the outcome and renders these cases inapposite. The record shows

that highlighting the victim's cause of death would have detracted from the defense

strategy, rather than bolstering it and demonstrates that counsel made a reasonable

decision regarding the utilization of a medical expert. Counsel's decision thus cannot be

deemed deficient under *Strickland*.

**Count 6: Counsel failed to engage in plea negotiations**

Rodriguez claims that counsel was ineffective for failing to present a counter-offer

to the government as a part of plea negotiations. In support, he offers *Lafler v. Cooper*, 566

U.S. 156 (2012) for the proposition that counsel can be found ineffective for failing to

negotiate a better plea. (ECF No. 746) at 31. In *Lafler* and *Frye*,[10] decided on the same day,

the defendants sought "a remedy when inadequate assistance of counsel caused

nonacceptance of a plea offer and further proceedings led to a less favorable outcome."

*Lafler*, 566 U.S. at 160.

In *Frye*, defense counsel did not inform the defendant of the plea offer, the offer

lapsed, and the defendant pleaded guilty, "but on more severe terms." *Id*. In *Lafler*, "the

favorable plea offer was reported to the client but, on advice of counsel, was rejected." *Id*.

Here, Rodriguez states that he asked his attorney to pursue a plea agreement "for a

conditional no contest plea for 20 years" and that his attorney "refused to present his plea

offer to the prosecution or the court." (ECF No. 746) at 30. Later, "after the government

---

[10] *Missouri* v. *Frye,* 566 U.S. 134 (2012).

came up with a 25 year plea offer" Rodriguez claims that counsel refused to approach the government with his counter-offer. *Id* at 30-31.

To establish ineffective assistance of counsel in plea negotiation, a defendant must show both that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases,'" *Hill v. Lockhart,* 474 U.S. 52, 56 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)), and that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper,* 566 U.S. 156 (2012). Applying the law to the facts of his case, Rodriguez must show that there is a reasonable probability that the government would have accepted his counter offer.

Former Special Assistant United States Attorney Charles E. Duross attests that he, co-counsel Harry C. Wallace, Jr., and Attorney Robert King, Rodriguez's counsel, engaged in a plea discussion. In that conversation, the prosecuting attorneys presented an offer predicated on Rodriguez testifying against his co-defendants. Attorneys Duross and Wallace were clear in their communication with Attorney King that a plea of guilty *and* Rodriguez's testimony was the only circumstance under which they would agree to a plea. They also made it clear to Attorney King that they would not consider any counter offers. Attorney King's representation to Rodriguez that the government would not commit to any

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 20

plea agreement that did not involve cooperation was accurate. Rodriguez is correct that the

government's offer was essentially "take it or leave it." By his own admission, Rodriguez

chose to "leave it." Given the government's firm position, further attempts at plea

negotiation by Attorney King would have been fruitless. Consequently this claim is

meritless.

**Count 7: The Court relied on facts not in evidence at sentencing**

Rodriguez's motion attacks his sentence pursuant to *Alleyne v. United States*, 133 S.

Ct. 2151 (2013). In his reply, Rodriguez acknowledges that *Alleyne* "is not retroactive to

cases on collateral review."[11] (ECF No. 833) at 20. Accordingly, the Court finds this claim

moot.

**IV. CONCLUSION**

Based upon the foregoing, IT IS HEREBY RECOMMENDED that Petitioner Angel

Rodriguez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (ECF

No. 746) be **DENIED** without an evidentiary hearing.[12]  It is further recommended that a

---

[11] "*Alleyne* has not been made retroactively applicable to cases on collateral review," *Pavulak v. United States*, 248 F. Supp. 3d 546, 564 (D. Del. March 31, 2017) (citing *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014)), and therefore "cannot be applied retroactively to cases on collateral review." *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014).

[12] The question of whether to order an evidentiary hearing when considering a motion to vacate a sentence under § 2255 "is committed to the sound discretion of the district court." *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). A § 2255 evidentiary hearing "is unnecessary when the 'files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Padilla–Castro,* 426 F. App'x 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)). Here, the record in this case conclusively shows that Rodriguez is not entitled to relief.

*Rodriguez v. United States*
1:13-cv-00034; 1:04-cr-00105-3
Report and Recommendation
Page 21

certificate of appealability be **DENIED**.[13]

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

ENTER:

Dated: April 20, 2018                      /s/ George W. Cannon, Jr.
                                           GEORGE W. CANNON, JR.
                                           MAGISTRATE JUDGE

---

[13]When a district court issues a final order on a § 2255 motion, it must make a determination whether it will permit a certificate of appealability. 3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1). A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the record fails to show a violation of Rodriguez's constitutional rights. Accordingly, a certificate of appealability should be denied.