## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Action No. 2004-0105** |
| **v.** | ) | |
| | ) | |
| **ANGEL RODRIGUEZ, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Angel Rodriguez**
    *Defendant Pro Se*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Magistrate Judge George W. Cannon Jr.'s Report and Recommendation ("R&R") (Dkt. No. 896) regarding Defendant Angel Rodriguez's ("Rodriguez") Motion to Vacate (Dkt. No. 746); the Government's Response to Rodriguez's Motion to Vacate (Dkt. No. 826); Rodriguez's Reply (Dkt. No. 833); the Government's Supplemental Brief (Dkt. No. 895); Rodriguez's Objections to Magistrate Judge Cannon's R&R (Dkt. No. 899); and Rodriguez's First through Eighth Motions to Supplement his Motion to Vacate (Dkt. Nos. 811, 858, 863, 867, 955, 956, 981, 987). Rodriguez asserts eight grounds for relief in his Motion to Vacate (Dkt. No. 736), and four additional grounds in his Second, Fifth, Sixth, Seventh, and Eighth Motions to Supplement (Dkt. Nos. 858, 955, 956, 981). The Court previously granted Rodriguez's eight Motions to Supplement (Dkt. No. 993), and the Court here addresses

the grounds for relief raised in both Rodriguez's initial Motion to Vacate and his Motions to Supplement.

For the reasons that follow, the Court finds that two of Rodriguez's convictions—Counts 6 and 9—must be vacated and set for resentencing. Because the Court finds that Rodriguez's Motion to Vacate is otherwise without merit, the Court will deny the remainder of Rodriguez's Motion. The Court will also adopt Magistrate Judge Cannon's R&R as modified herein.

## I.    BACKGROUND

Following a four-week trial in early 2007, a jury found Angel Rodriguez guilty of eleven counts stemming from a string of crimes he committed together with his three co-defendants in early 2004, including carjacking, attempted robbery, and murder.[1] The trial court subsequently entered judgments of acquittal on two of these counts and sentenced Rodriguez, *inter alia*, to life imprisonment.[2] Rodriguez and his co-defendants timely appealed on a variety of grounds, and the Third Circuit affirmed Rodriguez's convictions and sentence. *United States v. Berrios*, 676 F. 3d 118, 144 (3d Cir. 2012).

After his direct appeal was denied, Rodriguez timely filed a Motion to Vacate under 28 U.S.C. § 2255 ("Section 2255"), in which he asserts seven grounds for post-conviction relief. (Dkt. Nos. 746). The Court referred Rodriguez's Motion to Vacate to Magistrate Judge Cannon (Dkt. No. 864), who recommended that the Court deny the Motion, concluding that the eight grounds specified therein are without merit (Dkt. No. 896). Rodriguez objected to Magistrate Judge

---

[1] *See* Dkt. No. 309 (Third Superseding Indictment); Dkt. No. 485 (Verdict Form).

[2] *See* Dkt. Nos. 578, 579 (Judgment and Commitment Orders on Territorial and Federal Counts); Dkt. No. 658 (acquitting Rodriguez on Count 3, carjacking in violation of 18 U.S.C. § 2119, and Count 4, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)); Dkt. No. 685 (Amended Judgment and Commitment Order).

Cannon's R&R (Dkt. No. 885), and also filed eight Motions to Supplement his Motion to Vacate in which he asserts a total of four additional grounds for post-conviction relief.[3] The Court granted each of Rodriguez's eight Motions to Supplement. (Dkt. No. 993).

Although Magistrate Judge Cannon's R&R addressed only the eight grounds for relief initially specified in Rodriguez's Motion to Vacate, the Court here addresses both those eight grounds for relief and the four additional grounds specified in Rodriguez's Motions to Supplement. Based on the Court's review of the entire record, the Court concludes that two of Rodriguez's convictions—Counts 6 and 9—must be vacated and set for resentencing.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) (similar). When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (similar). Where the parties do not timely object to a magistrate judge's R&R, there is no statutory requirement that a district court review the R&R before accepting it. *See Thomas v. Arn*, 474 U.S. 140, 151 (1985); 28 U.S.C. § 636(b)(1)(C) (a district judge shall "make a *de novo*

---

[3] *See* Dkt. No. 811 (First Motion to Supplement); Dkt. No. 858 (Second Motion to Supplement); Dkt. No. 863 (Third Motion to Supplement); Dkt. No. 867 (Fourth Motion to Supplement); Dkt. No. 955 (Fifth Motion to Supplement); Dkt. No. 956 (Sixth Motion to Supplement); Dkt. No. 981 (Seventh Motion to Supplement); Dkt. No. 985 (Eighth Motion to Supplement). Rodriguez asserts four additional grounds for post-conviction relief in his Second, Fifth, Sixth, Seventh, and Eighth Motions to Supplement. His other Motions to Supplement elaborate upon the grounds contained in his initial Motion to Vacate.

determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) (recognizing that *Thomas* permits the district court to decline to review undisputed recommendations).

Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). When no objection to a magistrate judge's report and recommendation is made, the district court reviews the report and recommendation for plain error. *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that by failing to object to a report and recommendation, the litigant "waived its right to have this Court conduct a *de novo* review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error.'"). Under this standard, a district court reviews a magistrate judge's report and recommendation for error that is "clear" or "obvious." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007).

### B.  Motion to Vacate

Motions to vacate under Section 2255 are "the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 "afford[s] federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  To prevail on a Section 2255 motion, a petitioner must show that: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the

court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the petitioner meets the necessary criteria, the court must vacate the judgment against petitioner, discharge or resentence the petitioner, or grant the petitioner a new trial, as appropriate. 28 U.S.C. § 2255(b). However, not every error of law may be raised in a Section 2255 motion. *Davis*, 417 U.S. at 346. Rather, the remedies afforded by Section 2255 are intended only where the "claimed error of law [constitutes] a 'fundamental defect which inherently results in a complete miscarriage of justice'" and "'presents exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" *Id*. (quoting *Hill v. United States*, 368 U.S. 428, 428 (1962)).

### III.    DISCUSSION

Rodriguez objects, in substance, to the entirety of Magistrate Judge Cannon's R&R. (Dkt. No. 899). The Court will therefore review Magistrate Judge Cannon's R&R *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). Below, the Court begins by summarizing the eight grounds upon which Rodriguez seeks relief in his initial Motion to Vacate and the four grounds upon which he seeks relief in his seven Motions to Supplement. (*See infra*, Section III.A). The Court then concludes that each of the eight grounds initially specified in Rodriguez's Motion to Vacate are without merit (*see infra*, Section III.B), but that the arguments raised in his Motions to Supplement warrant vacatur of Counts 6 and 9 in light of intervening changes in the law (*see infra*, Section III.C).[4] Accordingly, the Court will vacate Counts 6 and 9, and will, by separate Order, schedule

---

[4] Rodriguez was charged in Count 6 with causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). (Dkt. No. 685 at 1). He was charged in Count 9 with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 2. Because Rodriguez's Motion to Vacate and the existing record make clear that Rodriguez is

a resentencing hearing on the seven remaining counts. (*See infra*, Section III.D). The Court will otherwise deny Rodriguez's Motion to Vacate.

### A.   The Grounds Upon Which Rodriguez Seeks Relief

Rodriguez's Motion to Vacate initially specified eight grounds upon which he seeks post-conviction relief, all of which appear intended to attack his nine convictions.[5] (Dkt. No. 746 at 4-34). Because Rodriguez comes before the Court *pro se*, the Court construes these grounds liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Liberally construed, the eight grounds Rodriguez initially asserted in his Motion to Vacate are:

**(1)**   Rodriguez argues that his trial counsel was ineffective in failing to move for a change of venue given the media attention the case received, thereby violating his due process rights and Sixth Amendment right to effective counsel. (Dkt. No. 746 at 12).

**(2)**   Rodriguez argues that the trial court improperly impaneled a juror who stated during *voir dire* that she could not be fair and impartial, thereby violating his due process rights and his Sixth Amendment right to an impartial jury. Relatedly, Rodriguez argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel. *Id.*

**(3)**   Rodriguez argues that his trial counsel was ineffective in failing to file a writ of certiorari to the United States Supreme Court, thereby violating his Sixth Amendment right to effective counsel. *Id.* at 15.[6]

---

not entitled to any relief other than that which the Court grants here, the Court will rule on Rodriguez's Motion to Vacate without holding an evidentiary hearing. *See United States v. Delbridge*, 504 F. App'x 145, 148 (3d Cir. 2012) ("A court may dismiss a motion to vacate without . . . holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief.").

[5] Although Rodriguez's Motion to Vacate enumerates only seven grounds for relief, the Court agrees with Magistrate Judge Cannon that the first ground Rodriguez asserts actually consists of two independent grounds, and the Court so construes Rodriguez's Motion here. (*See* Dkt. No. 896 (R&R) at 9-10 (construing the first ground for relief specified in Rodriguez's Motion as consisting of two independent claims: that Rodriguez's trial counsel was ineffective insofar as he failed to move for a change of venue; and that the trial court failed to excuse a biased juror and counsel was ineffective in failing to raise this issue).

[6] Rodriguez's First Motion to Supplement (Dkt. No. 811) contains additional argument and evidence bearing upon these grounds for relief, which the Court considers herein.

    **(4)**    Rodriguez argues that the trial court improperly closed the courtroom to the public on a day during which the court instructed the jury, thereby violating his Sixth Amendment right to a public trial. Relatedly, Rodriguez argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel. *Id.* at 16.[7]

    **(5)**    Rodriguez argues that the trial court improperly held an *ex parte* conference with a key Government witness, and that the trial court improperly prohibited Rodriguez from cross-examining the witness with respect to his statements in the *ex parte* conference, thereby violating his due process rights and Sixth Amendment right of confrontation. Relatedly, Rodriguez argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel. *Id.* at 25.

    **(6)**    Rodriguez argues that his trial counsel was ineffective in failing to obtain a medical expert and failing to cross-examine the Government's medical expert, thereby violating his due process rights and Sixth Amendment right to effective counsel. *Id.* at 28.

    **(7)**    Rodriguez argues that his trial counsel was ineffective in failing to present a counteroffer to the Government during plea negotiations, thereby violating his Sixth Amendment right to effective counsel. *Id.* at 30.[8]

    **(8)**    Rodriguez argues that some number of his convictions must be vacated in light of the Supreme Court's 2013 decision in *Alleyne v. United States*, 570 U.S. 99 (2013). Relatedly, Rodriguez argues that his trial counsel was ineffective in failing to object to the alleged use of acquitted conduct during sentencing, thereby violating his Sixth Amendment right to effective counsel. *Id.* at 31.

In addition to the eight grounds for relief initially specified in Rodriguez's Motion to Vacate, the Court will also address the four additional grounds for relief Rodriguez specifies in his Motions to Supplement. These four additional grounds are:

    **(9)**    Rodriguez argues that some number of his convictions must be vacated in light of the Supreme Court's 2015 decision in *Johnson v. United States*, 576 U.S. 591 (2015). (Dkt. No. 858 (Second Motion to Supplement)).

---

[7] Rodriguez's Third Motion to Supplement (Dkt. No. 863) contains additional argument and evidence bearing upon these grounds for relief, which the Court considers herein.

[8] Rodriguez's First and Fourth Motions to Supplement (Dkt. Nos. 811, 867) contain additional argument and evidence bearing upon these grounds for relief, which the Court considers herein.

**(10)**    Rodriguez argues that some number of his convictions must be vacated in light of the Supreme Court's 2021 decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). (Dkt. No. 981 (Seventh Motion to Supplement)).

**(11)**    Rodriguez argues that some number of his convictions must be vacated in light of the Supreme Court's 2022 decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). (Dkt. Nos. 955, 956, 981 (Fifth, Sixth, and Seventh Motions to Supplement)).

**(12)**    Rodriguez argues that some number of his convictions must be vacated in light of the Supreme Court's 2023 decision in *Lora v. United States*, 143 S. Ct. 1713 (2023). (Dkt. No. 987 (Eighth Motion to Supplement)).

## B.   The Eight Grounds Initially Specified in Rodriguez's Motion to Vacate

The Court begins with the eight grounds initially specified in Rodriguez's Motion to Vacate. The Court concludes that each of these eight challenges is without merit.

### 1.   Ground One: Counsel's Failure to Move for Change of Venue

In his first ground for relief, Rodriguez argues that his trial counsel was ineffective in failing to move for a change of venue given the intense media coverage of the case. (Dkt. No. 746 at 12).

#### a.   Applicable Legal Principles: Ineffective Assistance of Counsel

As a general matter, claims of ineffective assistance of counsel may be properly raised in a motion to vacate under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013). To prevail on an ineffective assistance claim, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690 (1984). More specifically, a petitioner must demonstrate, by a preponderance of the evidence, both: **(1)** that his counsel's

8

representation was deficient (the "deficiency prong"); and **(2)** that his counsel's deficient performance "prejudiced" his defense (the "prejudice prong"). *Id.* at 687.

To satisfy the deficiency prong, a petitioner must show that his counsel "made errors so serious as to deprive the defendant of a fair trial[.]" *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see also id.* at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). A court is not required to address the two prongs in order; rather, a court may dispose of an ineffective assistance claim on either prong. *See id.* at 697 (explaining that courts are not required to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one"). Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Id*. at 689. Thus, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).

The standard for ineffective assistance of appellate counsel is the same two-prong *Strickland* test as it is for trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). However, focusing on issues most likely to prevail "is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536 (1986). Accordingly, to establish the deficiency prong with respect to appellate counsel, a petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and that such issues were "clearly stronger" than those counsel chose to assert. *Smith*, 528 U.S. at 285; *see also Jones v. Barnes*, 463

U.S. 745, 752-54 (1983) (rejecting "*per se*" rule that appellate counsel must raise every nonfrivolous claim). Likewise, to establish the prejudice prong with respect to appellate counsel, a petitioner must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

### b.  Ground One is Without Merit

Rodriguez argues that the extensive media coverage of the events giving rise to his arrest and prosecution—including the robbery and death of a police officer—creates a presumption of prejudice that could only have been overcome by a change of venue, and that his trial counsel was ineffective insofar as he failed to move for a change of venue. (Dkt. No. 746 at 12).

"Presumed prejudice" of a jury venire arises when "media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process." *United States v. Savage*, No. CRIM.A. 07-550-03, 2012 WL 2376680, at *3 (E.D. Pa. June 25, 2012) (internal citations omitted). "[T]he community and media reaction ... must have been so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury." *Id.* at 3. The Third Circuit has cautioned that cases of presumed prejudice are "exceedingly rare." *Rock v. Zimmerman,* 959 F.2d 1237, 1253 (3d Cir. 1992)*, overruled on other grounds by Brecht v. Abrahamson,* 507 U.S. 619 (1993); *Flamer v. State of Delaware,* 68 F.3d 736, 754 (3d Cir.1995) (*en banc*)).

When determining whether prejudice may be presumed based upon pretrial publicity, courts look to the following factors: "(1) the size and characteristics of the community; (2) the general content of the news coverage (including facts such as whether the stories referenced the defendant's confession or other similarly blatantly prejudicial information, whether the news

10

account was factual and objective versus sensational, inflammatory, or slanted toward the prosecution, and whether the stories focus on the defendant personally as opposed to the crime itself); (3) the timing of the media coverage relative to the commencement of the trial; and (4) whether there was any media interference with actual courtroom proceedings." *Id.* at *3–4 (quoting *United States v. Diehl-Armstrong*, 739 F.Supp.2d 786, 793 (W.D. Pa. 2010)). Upon consideration of these factors, the Court concludes that the media coverage of this matter did not warrant a change of venue, and Rodriguez's counsel was not ineffective in failing to move for such.

With regard to the first factor—the size and characteristics of the community in which the crime occurred—the Court finds that this weighs in favor of a finding of presumed prejudice. At the time of the trial, the total population for St. Croix—comprising 84 square miles in geographic area—was 53,234, which is considerably smaller than those communities in which courts have found a likelihood of prejudice.[9] *Compare Skilling*, 561 U.S. at 382 (finding no presumed prejudice where more than 4.5 million people were eligible for jury duty in the fourth most populous city in the United States) and *Savage*, 2012 WL 2376680, at *4 (finding no presumed prejudice where the jury pool was comprised of approximately 5.5 million people from nine counties) *with Rideau v. Louisiana,* 373 U.S. 723, 724–25 (1963) (finding presumed prejudice where the crime was committed in a rural parish with a population of 150,000 individuals). Therefore, the first factor weighs in favor of a finding of presumed prejudice.

The second factor—the nature of the coverage—weighs against a finding of presumed prejudice. The six local news articles that Rodriguez submitted provide factual and objective

---

[9] *See Census Bureau Releases Census 2000 Population Counts for the U.S. Virgin Islands*, https://www.census.gov/newsroom/releases/archives/census_2000/cb01cn172.html (last visited July 18, 2023).

coverage on the occurrence of the robbery incident; the victim's funeral service; law enforcement's

ongoing investigation to identify the suspects; law enforcement's denial of rumors that there was

obstruction in the investigation; and the arrest of Rodriguez's co-conspirator. (Dkt. No. 833-1). In

fact, none of these articles mention Rodriguez or his involvement in the robbery. Further, the

reports are not "sensational, inflammatory, or slanted toward the prosecution."[10] *Savage*, 2012 WL

2376680, at \*3. Nor do these news stories contain a "confession or other blatantly prejudicial

information of the type readers or viewers could not reasonably be expected to shut from sight."

*Skilling*, 561 U.S. at 382. As Magistrate Judge Cannon correctly observed, the circumstances in

this case are distinguishable from those cases in which courts have deemed media coverage so

prejudicial to the defendant as to warrant the conclusion that a failure to change venue prejudiced

the defendant's right to an impartial jury. As explained in the R&R:

> The publicity surrounding the crime and leading up to Rodriguez's trial
> does not equal "the spectacle of [the defendant] personally confessing
> in detail to the crimes with which he was later to be charged" as found
> in *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963)[.] [Further,] the
> coverage preceding the Rodriguez trial does not rival a live broadcast
> of the proceeding and "publicity totaling 11 volumes of press clippings"
> giving the case national notoriety, including the defendant's likeness
> gracing the cover of Time magazine, as in *Estes v. Texas*, 381 U.S. 532
> (1965)[.] . . . [T]he publicity at issue here is also not nearly as impactful
> as the "widely felt sense of victimhood among Houstonians and the
> voluminous adverse publicity" that surrounded the Enron-related
> *Skilling v. United States*, 561 U.S. 358, 431 (2010), where, in part
> because "over four years elapsed between Enron's bankruptcy and
> Skilling's trial," the Supreme Court held that the defendant failed to
> establish that pretrial publicity prevented him from obtaining [a] fair
> trial. *Id.* at 361.

---

[10] The titles of the articles submitted by Rodriguez—"Officer Recovers: Police Still On the
Lookout for Saturday Night Robbers"; On the Lookout: Police Deny Obstruction Rumors in
Chapman Case"; "With Dignity and Respect, A Final Farwell"; "Slain Officer's Body Met with
Full Police Honor"; "Officer Gunned Down During Wendy's Robbery"; and "Arrest Made in
Officer's Death"—also indicate that the news coverage was not so sensational or inflammatory as
to raise a presumption of prejudice. (Dkt. No. 833-1).

(Dkt. No. 896 at 7-8). Therefore, the Court finds that the nature of the news coverage—as submitted on the record—weighs against a presumption of prejudice.

Next, the third factor—the timing of the media coverage in relation to the start of the trial—is another factor that weighs against a finding of presumed prejudice. "Potential prejudice can be dissipated if there is a large lapse in time between the widespread publicity and the trial." *Hetzel v. Lamas*, 630 F.Supp.2d 563, 570 (3d Cir. 2009). Where there is a gap of time between the news coverage and trial, courts have determined that no presumption of prejudice existed such that a change in venue was necessary. *See, e.g.*, *Murphy v. Florida*, 421 U.S. 794, 802 (1975) (finding that media coverage did not serve to prejudice petitioner because the articles about the petitioner's crimes were published seven months prior to jury selection); *Rock*, 959 F.2d at 1252 (finding no presumption of prejudice where extensive adverse publicity occurred four years prior to the trial, and the record did not reveal a "barrage of inflammatory publicity immediately prior to [defendant's] trial"); *Hetzel*, 630 F.Supp.2d at 571 (finding that pretrial publicity did not warrant a change of venue where time between media attention and trial was just over a year). Here, because there was a gap of almost three years between the news coverage and the commencement of trial, this third factor weighs against a finding of presumed prejudice.

Lastly, there is no evidence on the record that there was media interference in the actual courtroom proceedings during the trial.

In view of the foregoing, Rodriguez's argument that the extensive pretrial publicity presumptively prejudiced the jury venire is without merit. Accordingly, the Court finds that a change of venue based on the media coverage was not warranted and Rodriguez's trial counsel's failure or refusal to move for a change of venue neither amounted to deficient representation nor

prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687. The Court will therefore deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 2.   Ground Two: Biased Juror

In his second ground for relief, Rodriguez argues that the trial court improperly impaneled a juror—Juror No. 6—notwithstanding that Juror No. 6 stated during *voir dire* that she could not be fair and impartial. (Dkt. No. 746 at 12). Relatedly, Rodriguez argues that both his trial counsel and appellate counsel were ineffective in failing to raise this issue. *Id.* at 12-13.

### a.   Applicable Legal Principles: Right to Impartial Jury

The Sixth Amendment guarantees every criminal defendant "the right to a speedy and public trial, by an impartial jury[.]" U.S. Const. amend. VI. The Due Process Clause of the Fifth Amendment complements the Sixth Amendment's guarantee of trial by an impartial jury. *See Morgan v. Illinois,* 504 U.S. 719, 727 (1992) ("[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."). *Voir dire* examination "serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias," because "[b]ias that emerges in response to *voir dire* questioning can lead to excusal of a juror for cause or may facilitate the parties' intelligent exercise of peremptory strikes." *United States v. Mitchell*, 690 F.3d 137, 141 (3d Cir. 2012).

Traditionally, courts have distinguished between "actual" and "implied" biases of jurors. *See id.* at 142 (collecting cases). Actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality," while implied bias is "bias conclusively presumed as a matter of law"—that is, "bias attributable in law to the prospective juror regardless of actual partiality." *Id.* (internal quotation marks and citations omitted). The

doctrine of implied bias "is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary." *Id.*

### b. Ground Two is Without Merit

Rodriguez argues that the trial court improperly impaneled Juror No. 6 notwithstanding that she stated during *voir dire* that she could not impartially decide the case—that is, notwithstanding that she confessed to actual bias. (Dkt. No. 746 at 12; *see Mitchell*, 690 F.3d at 141 (observing that actual bias "may become apparent when a venireperson admits partiality or may be inferred from responses to *voir dire* questioning.")). Rodriguez's argument with respect to Juror No. 6 is, however, based on an incorrect factual premise—undoubtedly caused by an error in the trial transcript. The trial transcript reflects that Juror No. 6 stated, during *voir dire*, that she could not impartially decide the case. (Trial Tr., Vol. 1, at 35-36). However, the transcript also reflects both that Juror No. 6 was excused for cause, *id.*, and that Juror No. 6 was impaneled, *id.* at 53, 77. The court reporter has submitted an affidavit in which she attests that, upon review of her stenographer notes, she realized that she had made a typographical error. Specifically, while the transcript is accurate insofar as it reflects that Juror No. 6 was impaneled, the transcript is inaccurate insofar as it reflects that Juror No. 6 stated that she could not impartially decide the case and that Juror No. 6 was excused for cause. (Dkt. No. 806-1 (Valerie Lawrence Aff.) at ¶ 6). In actuality, it was Juror No. 26 who stated that she could not impartially decide the case and who was excused for cause. *Id.* The Court accordingly concludes that this challenge is without factual basis or merit.

**Related Ineffective Assistance Claims**. Because this challenge is without merit, the Court finds that neither Rodriguez's trial counsel's nor appellate counsel's failure or refusal to raise these

issues amounted to deficient representation or prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 3.   Ground Three: Writ of Certiorari

In his third ground for relief, Rodriguez argues that his appellate counsel was ineffective in failing to file a petition for a writ of certiorari to the United States Supreme Court following the Third Circuit's denial of his direct appeal in *United States v. Berrios*. (Dkt. No. 746 at 15 (citing *Berrios*, 676 F.3d 118)). However, "where there is no constitutional right to counsel there can be no deprivation of effective assistance," *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), and there is no constitutional right to the assistance of counsel in preparing petitions for certiorari, *Wainwright v. Torna*, 455 U.S. 586, 587 (1982). *See also* Supreme Court Rule 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion.").

Because Rodriguez was not entitled to counsel at the Supreme Court level, the Court finds that Rodriguez's appellate counsel's refusal to assist Rodriquez in filing a petition for a writ of certiorari neither amounted to deficient representation nor prejudiced Rodriguez's defense. *Smith*, 528 U.S. at 285. The Court will therefore deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 4.   Ground Four: Public Trial

In his fourth ground for relief, Rodriguez argues that the trial court's closure of the courtroom on February 1, 2007—during the course of the court's jury instructions—violated his Sixth Amendment right to a public trial. (Dkt. No. 746 at 17-25). Relatedly, Rodriguez argues that his trial and appellate counsel were ineffective insofar as they failed to raise this issue. *Id.* at 16.

### a. Applicable Legal Principles: Right to Public Trial

The right to a public trial originates in the Sixth Amendment, which directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia,* 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale,* 443 U.S. 368, 380 (1979)).

"In general, the denial of a defendant's right to a public trial is a 'structural error'—*i.e.,* a defect 'affecting the framework within which the trial proceeds'—requiring reversal irrespective of whether the defendant demonstrates the error prejudiced his substantial rights." *United States v. Greene,* 431 Fed. Appx. 191, 195 (3d Cir.2011) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991)). "It does not necessarily follow, however, that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution[.]" *Simon v. Government of the Virgin Islands.* 63 V.I. 902, 116 F. Supp. 3d 529, 564 (D.V.I. 2015) (quoting *Gibbons v. Savage,* 555 F.3d 112, 120 (2d Cir.2009)), *aff'd in part, vacated in part, rev'd in part on other grounds sub nom. Simon v. Gov't of the Virgin Islands*, 929 F.3d 118 (3d Cir. 2019). "Not every courtroom closure or denial of public access to court proceedings violates a defendant's right to a public trial or otherwise implicates a defendant's Sixth Amendment rights." *Id.* (citing *United States v. Ivester,* 316 F.3d 955, 958–59 (9th Cir. 2003) and *Peterson v. Williams,* 85 F.3d 39, 42–43 (2d Cir. 1996)). Rather, "there are certain instances in which exclusion [of the public] cannot be characterized properly as implicating the constitutional guarantee." *Id.* (citing *Braun v. Powell,*

227 F.3d 908, 918 (7th Cir. 2000), *United States v. Lnu,* 575 F.3d 298, 307 (3d Cir. 2009), and

*United States v. Patton,* 502 Fed. Appx. 139, 142 (3d Cir. 2012)).

### b.  Ground Four is Without Merit

Rodriguez alleges that the trial closed for the entire day on February 1, 2007. (Dkt. No. 746

at 16). This characterization is belied by the facts.

The record reflects that approximately halfway through the charge to the jury, the trial

judge called counsel to sidebar and informed counsel:

> I was just notified that the Marshals have locked the courtroom. It has
> been the practice from Judge Christian, but under subsequent attacks,
> the nature of the trial, I wanted to let you know that this had come to my
> attention, and I had ordered the Marshal to lock the courtroom.

(Trial Tr., Vol. 16, at 28). However, the record is devoid of any evidence that the Court excluded

members of the public from the courtroom during instructions, and the Government represents that

"many spectators were in the courtroom during the closing arguments, and they remained in the

courtroom during the jury charge." (Dkt. No. 826 at 29).[11] Instead, it appears that the Court acceded

to the Marshals' common practice of locking the courthouse doors to prevent any ingress or egress

during the time that the jury was being charged. (Trial Tr., Vol. 16., at 28). The question therefore

becomes whether this action—a temporary prohibition on ingress and egress into the courtroom—

"implicat[es] the constitutional guarantee" to a public trial afforded by the Sixth Amendment.

*Simon v. Government of the Virgin Islands.* 116 F. Supp. 3d at 564.

The Appellate Division of this Court addressed strikingly similar circumstances in *Simon*

*v. Government of the Virgin Islands. Id.* In *Simon*, the question presented was "whether locking

---

[11] The Government's Response to Rodriguez's Motion to Vacate was drafted by the Government's
trial counsel.

the courtroom doors during closing arguments and jury instructions . . . constitutes a Sixth Amendment violation." *Id.* at 564. As here, *Simon*, did not involve a complete closure of the courtroom; rather, the judge temporarily limited spectators' ingress and egress during jury instructions (and closing arguments). *See id.* at 566.

The *Simon* Court held that the temporary prevention of the public's ingress and egress from the courtroom—during closing arguments and jury instructions—does "not rise to the level of a denial of public access, much less a Sixth Amendment violation." *Id.* at 567. In reaching this conclusion, the *Simon* Court noted that "[d]espite the locking of the doors, the judge did not remove members of the public from the courtroom, nor did he forbid them to leave. Rather, he simply attempted to restrict their movement out of the courtroom to breaks when one attorney finished his closing and before the next one began to speak, in order to avoid jury distraction during these important parts of the proceeding." *Id.* at 566. The *Simon* Court also noted that, "[n]otwithstanding the locked courtroom doors, the record does not indicate that anyone who wished to enter or leave the courtroom was prevented from doing so, and Simon does not so argue. Moreover, Simon does not claim that there was anything but free and unrestricted access to the courtroom at all other times during the trial." *Id.* at 566-67.

At least one other district court in the Third Circuit has reached the same conclusion as the *Simon* court. *See United States v. Cannon,* No. 11-CV-00160, 2011 WL 1103656, at *4 (E.D. Pa. Mar. 23, 2011) (where ingress and egress from courtroom was not permitted during jury instructions, anyone who wished to remain could do so, and where there was no evidence that anyone was excluded during the charge, there were no grounds for objecting to this procedure). Although the Third Circuit has not addressed this issue, other Circuits have also reached the same conclusion in the same or comparable circumstances. *See United States v. Scott,* 564 F.3d 34, 37-

28 (1st Cir. 2009) (trial court's order preventing anyone from leaving or entering the courtroom during its charge to the jury did not constitute a violation of the defendant's right to a public trial); *Herring v. Meachum,* 11 F.3d 374, 239 (2d Cir.1993) (holding trial court's decision to lock the doors during jury instruction "did not effect a closure for Sixth Amendment purposes" because members of the public had access to the courtroom before the doors were locked and some members of the public were present when the jury charge was delivered); *Bell v. Evatt,* 72 F.3d 421, 433 (4th Cir.1995) (rejecting defendant's argument that trial court's prevention of ingress and egress during witness testimony violated right to public trial and holding that the defendant's Sixth Amendment rights were not implicated by "temporary limitation of ingress and egress to the courtroom to prevent disturbance of the proceedings."); *see also United States v. Dugalic,* 489 F. App'x. 10, 19 (6th Cir. 2012) (holding that there was no violation of the right to a public trial where "the public was not denied access to the courtroom during closing arguments; it was merely prevented from entering and leaving the courtroom while those arguments were going on.").

The Court finds these decisions persuasive and comparable to the instant case. Here, there is no evidence that the trial court sought to exclude the public from attending the jury instructions, and the Government has represented that there were members of the public present during the instructions. There is also no evidence that the trial court's locking of the doors actually excluded anyone from the proceedings, nor is there evidence that the trial court excluded anyone from any other phase of the trial. In these circumstances, the Court concludes that the trial court's prevention of any ingress or egress during the time that the jury was being charged does not constitute a denial of public access to court proceedings such as to implicate Rodriguez's Sixth Amendment rights.

In view of the foregoing, the Court concludes that the challenge Rodriguez specifies in his nineteenth ground for relief is without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because this challenge is without merit, the Court finds that neither Rodriguez's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 5.  Ground Five: *Ex Parte* Conference

In his fifth ground for relief, Rodriguez argues that the trial court improperly held an *ex parte* conference with a key Government witness and improperly prohibited Rodriguez from cross-examining the witness with respect to his statements in the *ex parte* conference, thereby violating his due process rights and Sixth Amendment right of confrontation. (Dkt. No. 746 at 25). Relatedly, Rodriguez argues that his trial and appellate counsel were ineffective insofar as they failed to raise this issue. *Id.* at 26.

As Magistrate Judge Cannon explains, Rodriguez's challenge is based on an *ex parte* conference between "a witness, the witness's mother, and a third party outside the presence of counsel." (Dkt. No. 896 at 13). In substance, "the witness complained to the judge that he was being harassed by the police and that he had also been threatened by the defendants," and the witness "expressed that he did not want to testify, [] could not identify the robbers, and . . . was tired of being harassed by the police." *Id.* In response, the judge "told the witness that if he felt unsafe, some level of protection could be arranged for him," and "called the government attorneys into chambers and briefly explained that the witness might desire protection." *Id.* (citing Trial Tr., Vol. 1, at 50-70).

21

As Magistrate Judge Cannon also explained in his R&R, the witness's *ex parte* statements were not testimonial. *Id.* at 14-15. Accordingly, the Confrontation Clause, which applies only to testimonial statements, is not implicated. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004) (holding that the Confrontation Clause prohibits the government from introducing a witness's out-of-court statement if that statement is offered for the truth of the matter asserted therein and is testimonial).[12] Further, Rodriguez has failed to show how he was prejudiced by any of the statements made at the conference or by the trial judge's ruling that any questioning about the same was not permitted. (Dkt. No. 896 at 14). Indeed, "no evidence was admitted nor were any orders issued as a result of the conference." *Id.* The Court therefore concludes that this challenge is without merit.

**Related Ineffective Assistance Claims**. Because this challenge is without merit, the Court finds that neither Rodriguez's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 6. Ground Six: Medical Expert

---

[12] As the Supreme Court noted in *Crawford*, "various formulations of this core class of 'testimonial' statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Crawford*, 541 U.S. at 52 (internal quotation marks and citations omitted).

In his sixth ground for relief, Rodriguez argues that his trial counsel was ineffective in refusing to obtain a medical expert and refusing to cross-examine the Government's medical expert—characterizing these alleged omissions as "[un]sound strategy" and poor "tactical decision[s]" given that the Government's medical expert testified as to the victim's cause of death. (Dkt. No. 746 at 28). In making this challenge, Rodriguez "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 698.

### a.  Applicable Legal Principles: Counsel's Strategic Decisions

As the Supreme Court explained in *Strickland*, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective . . . strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." 466 U.S. at 681. As such, "[w]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id.* (quoting *Washington v. Strickland*, 693 F.2d 1243, 1355 (5th Cir. 1982), *rev'd on other grounds*, 466 U.S. 668 (1984)).

### b.  Ground Six is Without Merit

As Magistrate Judge Cannon explained in his R&R, the defense strategy at trial "was not to cast doubt on the cause of death but rather, to place doubt in the juror's minds that the co-defendants were, in fact, the robbers." (Dkt. No. 896 at 16; *see also id.* at 16-17 (summarizing key testimony elicited by defendants' counsel on this point)). Rodriguez argues that, notwithstanding that this was evidently the defense strategy, his counsel acted improperly in failing to consult with

23

a medical expert to determine whether casting doubt on the cause of death was a viable alternative or additional trial strategy. (Dkt. No. 746 at 29). Specifically, Rodriguez suggests that, because the Government's medical expert "admitted that the gun shot wound the [] victim received into his lungs was not a mortal wound," the victim could have "died of pneumonia . . . acquired from bacteria found in the hospital," and that his counsel should have consulted a medical expert to inquire as [to] whether the victim's death was caused by "surgical error . . . or some other condition." *Id.* (citing Trial Tr., Vol. 1, at 88, 96, 99).

Here, Rodriguez has not overcome the "strong" presumption that his counsel's choice to focus his defense on whether Rodriguez and his codefendants were the actual perpetrators was "sound trial strategy." *Strickland*, 466 U.S. at 698. Under the circumstances, counsel's decision to not pursue inquiries into the victim's cause of death—a defense that would have been, at minimum, a distraction from or at odds with, Rodriguez's principal defense—was a defensible choice. *See Strickland*, 466 U.S. at 681 (noting that "the inconsistency of unpursued and pursued lines of defense" is a relevant consideration). As Magistrate Judge Cannon observed, there is a reasonable probability that "highlighting the victim's cause of death would have detracted from the defense strategy, rather than bolstering it." (Dkt. No. 896 at 18). As he further noted, the existing record and overwhelming weight of evidence against Rodriguez and his codefendants—all of whom the jury found guilty on all counts—"does not support the supposition that the testimony of a medical expert would have changed the outcome." *Id.* This Court agrees.

Because Rodriguez has not overcome the strong presumption that his trial counsel acted reasonably in refraining from calling a medical expert or cross-examining the Government's medical expert, the Court finds that Rodriguez's counsel's actions neither amounted to deficient

representation nor prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 7.  Ground Seven: Plea Negotiations

In his seventh ground for relief, Rodriguez argues that his trial counsel was ineffective in failing to present a counteroffer to the Government during plea negotiations, thereby violating his Sixth Amendment right to effective counsel. (Dkt. No. 746 at 30). Rodriguez represents that he asked his trial attorney to pursue a plea agreement "for a conditional no contest plea for 20 years," but his attorney "refused to present his plea offer to the prosecution or the court." *Id.* at 30. Further, Rodriguez represents that "after the government came up with a 25-year plea offer," which he rejected, his attorney refused to approach the Government with the 20-year counteroffer. *Id.* at 30-31.

To establish ineffective assistance of counsel in plea negotiations, a defendant must show both that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases,'" *Hill v. Lockhart,* 474 U.S. 52, 56 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)), and that, "but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper,* 566 U.S. 156 (2012).

Rodriguez cannot show that there was a reasonable probability that his counteroffer would have been accepted. As Magistrate Judge Cannon summarizes:

> Former Special Assistant United States Attorney Charles E. Duross attests that he, co-counsel Harry C. Wallace, Jr., and Attorney Robert King, Rodriguez's counsel, engaged in a plea discussion. In that conversation,

> the prosecuting attorneys presented an offer predicated on Rodriguez testifying against his co-defendants. Attorneys Duross and Wallace were clear in their communication with Attorney King that a plea of guilty *and* Rodriguez's testimony was the only circumstance under which they would agree to a plea. They also made it clear to Attorney King that they would not consider any counter offers. Attorney King's representation to Rodriguez that the government would not commit to any plea agreement that did not involve cooperation was accurate. Rodriguez is correct that the government's offer was essentially "take it or leave it." By his own admission, Rodriguez chose to "leave it."

(Dkt. No. 896 at 19; *see also* Dkt. No. 895-1 (Charles E. Dutton Aff.) at ¶ 5 (providing that the aforementioned circumstances were "the *only* circumstances in which [the Government] would agree to enter into a plea agreement" (emphasis in original))).

Because Rodriguez cannot show that there was a reasonable probability that his counteroffer would have been accepted, the Court finds that Rodriguez's trial counsel's failure or refusal to raise these issues neither amounted to deficient representation nor prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

### 8.  Ground Eight: *United States v. Alleyne*

In his eighth ground for relief, Rodriguez argues that the trial court improperly considered acquitted conduct during Rodriguez's sentencing, in violation of the Supreme Court's subsequent decision in *United States v. Alleyne*, 570 U.S. 99, in which the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of that crime, not a "sentencing factor," and as such must be submitted to jury. (Dkt. No. 746 at 31-33 (citing 570 U.S. at 102)). Rodriguez also argues that his trial counsel was ineffective in failing to raise this issue. *Id.* at 32.

Rodriguez was initially sentenced on June 11, 2007 (Dkt. No. 531), and he was resentenced on January 28, 2009 following the Court's entry of acquittal on counts three and four (Dkt. Nos. 658, 682). Because Rodriguez was sentenced before the Supreme Court decided *Alleyne*, for his challenge to succeed, *Alleyne* must apply retroactively on collateral review for purposes of a petition under Section 2255(f)(3). *See infra,* n.13. *Alleyne* does not clear this bar. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) (holding that "*Alleyne* announced a procedural, rather than substantive rule" and that the "Supreme Court has not chosen to apply Alleyne's new rule retroactively to cases on collateral review"). Accordingly, Rodriguez's *Alleyne* challenge must fail.

**Related Ineffective Assistance Claim**. Because this challenge is without merit, the Court finds that Rodriguez's trial counsel's failure or refusal to object to the trial court's alleged use of acquitted conduct at sentencing neither amounted to deficient representation nor prejudiced Rodriguez's defense. *Strickland*, 466 U.S. at 687.

Accordingly, the Court will deny Rodriguez's Motion to Vacate insofar as it seeks relief on these grounds.

## C.   Rodriguez's Supplemental Challenges

In his Second, Fifth, Sixth, Seventh, and Eighth Motions to Supplement, Rodriguez challenges his convictions in light of rights the Supreme Court recognized after Rodriguez filed his Motion to Vacate on April 3, 2013. (Dkt. No. 746). Specifically, Rodriguez challenges his convictions in light of: *Johnson v. United States,* 576 U.S. 591 (Dkt. No. 858) (Ground 9); *Borden v. United* States, 141 S. Ct. 1817 (Dkt. No. 981) (Ground 10); *United States v. Taylor*, 142 S. Ct. 2015 (Dkt. Nos. 955, 956, 981) (Ground 11); and *Lora v. United States*, 143 S. Ct. 1713 (Dkt. No. 985) (Ground 12).

Motions to vacate filed under Section 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). As relevant here, where a petitioner challenges his conviction(s) based on rights subsequently recognized by the Supreme Court, Section 2255(f)(3) provides that the petitioner has one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.* § 2255(f)(3).[13]

As an initial matter, *Borden* and *Taylor* are decisions of substantive statutory interpretation, which apply retroactively on collateral review for purposes of Section 2255(f)(3). *Teague v. Lane*, 489 U.S. 288, 310 (1989). Likewise, *Johnson* sets forth a new substantive rule of constitutional law, which applies retroactively on collateral review for purposes of Section 2255(f)(3), *id.,* and the Supreme Court has also made *Johnson* retroactive on collateral review for purposes of Section 2255(h)(2), *Welch v. United States*, 578 U.S. 120, 135 (2016). The question therefore becomes whether Rodriguez's challenges were raised within Section 2255(f)(3)'s one-year statute of limitations.

Rodriguez's *Borden* challenge was raised outside of the one-year statute of limitations: *Borden* was decided on June 10, 2021, 141 S. Ct. 1817, and Rodriguez filed his Seventh Motion to Supplement, in which he raised his *Borden* challenge for the first time, on May 1, 2023 (Dkt.

---

[13] As Rodriguez raises these challenges in supplements to his first Section 2255 petition, the question is whether these decisions retroactively apply for purposes of Section 2255(f)(3), not whether the Supreme Court has "made" them retroactive for purposes of authorizing a second or successive petition under Section 2255(h)(2). *See generally In re Jackson*, 776 F.3d 292 (5th Cir. 2015) (explaining that decisions announcing a new substantive rule of either constitutional law or statutory interpretation apply retroactively for purposes of authorizing an initial petition under Section 2255(f)(3) regardless of whether the Supreme Court has "made" those rules retroactive, while only decisions announcing a new rule of constitutional law may apply retroactively for purposes of authorizing a second or successive petition under Section 2255(h)(2), and only if "made" retroactive by the Supreme Court).

No. 981). However, Rodriguez's *Johnson*, *Taylor,* and *Lora* challenges were each raised within the one-year statute of limitations: *Johnson* was decided on June 26, 2015, 576 U.S. 591, and Rodriguez filed his Second Motion to Supplement, in which he raised his *Johnson* challenge for the first time, on June 13, 2016. (Dkt. No. 858). *Taylor* was decided on June 21, 2022, 142 S. Ct. 2015, and Rodriguez filed his Fifth Motion to Supplement, in which he raised his *Taylor* challenge for the first time, on August 22, 2022. (Dkt. No. 955). *Lora* was decided on June 12, 2023, 143 S. Ct. 1713, and Rodriguez filed his Eighth Motion to Supplement, in which he raised his *Lora* challenge for the first time, on July 3, 2023. (Dkt. No. 985). Rodriguez's *Johnson*, *Taylor*, and *Lora* challenges are therefore timely.[14]

In *Taylor*, the Supreme Court addressed the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(c)(1) of Title 18 of the United States Code, which sets forth mandatory minimum sentences for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm[.]" 18 U.S.C. § 924(c)(1)(A). By virtue of interpreting Section 924(c), the *Taylor* decision also bears on the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(j), which sets forth additional mandatory minimum sentences for "[a] person who, in the course of a violation of [Section 924(c)], causes the death of a person through the use of a firearm[.]" *Id.* § 924(j).

---

[14] Because the Court concludes that Rodriguez's *Taylor* challenge warrants vacatur of Counts 6 and 9, the Court does not address whether Rodriguez's *Borden* challenge—which targets the same convictions and which was raised outside the one-year statute of limitations—"relates back" to the date he filed his initial petition. The Court also does not consider whether Rodriguez's *Johnson* and *Lora* challenges—which also target the same convictions—warrant relief.

Central to *Taylor* is the question of how the term "crime of violence"—as used in Section 924(c) and thereby incorporated into Section 924(j)—is defined. Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3). Section 924(c)(3)(A) is called the "elements clause," while Section 924(c)(3)(B) is called the "residual clause." In a decision pre-dating *Taylor*, the Supreme Court held that the residual clause of Section 924(c)(3) was unconstitutionally vague. *Davis v. United States*, 139 S. Ct. 2319, 2336 (2019). By consequence, only crimes that satisfy Section 924(c)(3)'s elements clause may qualify as "crime[s] of violence" for purposes of subjecting a defendant to enhanced penalties under Section 924(c)(1)(A) or Section 924(j). *Id.* It is this clause that the Supreme Court addressed in *Taylor*, holding that attempted Hobbs Act robbery does not qualify as a "crime of violence" under Section 924(c)(3)'s elements clause because no element of the offense categorically requires proof that the defendant used, attempted to use, or threatened to use force. 142 S. Ct. at 2020.

Rodriguez argues that *Taylor* warrants vacatur of two of his convictions. (Dkt. No. 981). First, **Count 6**—causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1)—is predicated upon Count 2, attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). (Dkt. No. 309 at 3, 7). Rodriguez was sentenced to life imprisonment on this count. (Dkt. No. 685 at 3). Second, **Count 9**—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)—is predicated upon Count 8, attempted carjacking in violation of 18 U.S.C. § 2119(1). (Dkt. No. 309 at 9, 10). Rodriguez was sentenced to 25 years' imprisonment on this count. (Dkt. No. 685 at 3).

30

Rodriguez is correct that *Taylor* warrants vacatur of Counts 6 and 9, as the Government recognizes here. (*See* Dkt. No. 882 at 14-15 (recognizing that, should the Court find that a *Taylor* challenge raised by one of Rodriguez's codefendants is timely, Counts 6 and 9 "need to be vacated")). *Taylor* precludes predicating a Section 924(c) conviction on attempted Hobbs Act robbery, and Rodriguez's Section 924(c) conviction on Count 6 is so predicated. The Court will therefore vacate Rodriguez's conviction on Count 6 on this basis. Likewise, Rodriguez's Section 924(j) conviction on Count 9 also falls to *Taylor* because—as the Government puts it in its response to one of Rodriguez's codefendants—"attempted carjacking . . . may consist only of attempt to present a threat, and therefore does not categorically qualify as a 'crime of violence' under the elements clause." (Dkt. No. 882 at 15). The Court will therefore vacate Rodriguez's Count 9 conviction based on the parties' agreement.[15]

---

[15] While the Government has not responded to the challenges Rodriguez raises in his Motions to Supplement, including Rodriguez's *Taylor* challenge, the Government did respond to an identical *Taylor* challenge raised by one of Rodriguez's co-defendants, Felix Cruz ("Cruz"). (Dkt. No. 982). There, the Government recognized that, if the Court found that Cruz's *Taylor* challenge was timely, Counts 6 and 9 "need to be vacated." *Id.* at 14-15. The Court notes that the Third Circuit has not yet addressed the question whether *Taylor* warrants vacatur of a conviction predicated on attempted carjacking. However, a panel of the Third Circuit appears to have recognized the likelihood that *Taylor* impacts such convictions in a recent unpublished opinion, in which it expressed "confiden[ce]" that the Government would "quickly" address the potential impact of *Taylor* on a defendant's Section 924(c) convictions that were predicated on attempted carjacking. *United States v. Lewis*, No. 22-2190, 2022 WL 4546859, at *1 n.1 (3d Cir. Sept. 29, 2022). The government has often taken the position, as it does here, that *Taylor* applies with equal force to attempted carjacking. *See, e.g., United States v. Daniels*, No. 11-CR-00008, 2023 WL 2588172, at *2 (M.D. Ala. Mar. 21, 2023) (noting that "the parties contend that *Taylor*'s analysis of attempt law applies equally to attempted carjacking because a conviction for attempted carjacking does not categorically require the government to prove the use, attempted use, or threatened use of force," and granting motion to vacate conviction on that basis) (internal citation omitted); *Williams v. United States*, No. 19-CV-02668, 2022 WL 17752128, at *2 (E.D. Mo. Dec. 19, 2022) (noting that "[t]he parties agree . . . that the Supreme Court's reasoning set forth in *Taylor* applies equally to attempted carjacking" and granting motion to vacate conviction on that basis); *cf. United States v. Obanion*, No. 98-CV-00442, 2022 WL 18027791, at *1 (D. Md. Dec. 30, 2022) (holding that conspiracy to commit carjacking and attempted carjacking "no longer qualify as crimes of violence

In view of the foregoing, the Court concludes that vacatur of Rodriguez's convictions on Counts 6 and 9 is warranted in light of *Taylor*. The Court addresses the consequences of this finding in the following section.

### D.  Effect of Vacatur

Having determined that Counts 6 and 9 are "vulnerable to collateral attack," the Court must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 18 U.S.C. 2255(b). The Third Circuit has adopted the "sentencing-package doctrine." *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997). The sentencing-package doctrine recognizes "a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan." *Id.* at 122 (quotation omitted); *see also Dean v. United States*, 581 U.S. 62, (2017) (explaining that sentencing-package cases "typically involve . . . a successful attack by a defendant on some but not all of the counts of conviction*"* (quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)). Accordingly, "[w]hen a conviction on one or more [] component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture[.]" *Davis*, 112 F.3d at 122 (quotation omitted). "The district judge's goal in revisiting the overall sentencing plan after vacatur of a conviction is to ensure that the punishment still fits both crime and criminal." *United States v. Grant*, 9 F.4th 186, 199 (3d Cir. 2021) (quotation omitted).

The Third Circuit has stressed that "the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts [are] *interdependent." United States v.*

---

in light of the opinion of the United States Supreme Court in [Davis] and the recent opinion of the Supreme Court in [*Taylor*]").

*Miller*, 594 F.3d 172, 180 (3d Cir. 2010) (citing *McKeever v. Warden SCI-Graterford,* 486 F.3d

81, 87-88 (3d Cir. 2007), and *United States v. Murray,* 144 F.3d 270, 273 n.4 (3d Cir.1998))

(emphasis in original). Where the sentences on the underlying counts are interdependent, *de novo*

resentencing is necessary. *Id.* at 181-82 ("[W]e reaffirm the sentencing package doctrine endorsed

in *Davis.* When a conviction on one or more interdependent counts is vacated on appeal, the

resentencing proceeding conducted on remand is *de novo* unless we specifically limit the district

court's authority. Moreover, counts that were grouped pursuant to the Sentencing Guidelines at the

original sentencing are interdependent, such that the vacation of one of the grouped counts requires

a *de novo* sentencing on remand unless we direct otherwise."); *United States v. Ciavarella*, 716

F.3d 705, 734 (3d Cir. 2013) (same). This is because interdependent offenses "result in an

aggregate sentence, not sentences which may be treated discretely." *Id.* at 180 (quotation omitted).

Offenses are interdependent when they are "grouped" pursuant to Section 3D1.2 of the

Sentencing Guidelines, "Groups of Closely Related Counts." *Id.* at 180-81. Section 3D1.2

provides:

> All counts involving substantially the same harm shall be grouped together into a single
> Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions
>     connected by a common criminal objective or constituting part of a common
>     scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense
>     characteristic in, or other adjustment to, the guideline applicable to another of
>     the counts.
> (d) When the offense level is determined largely on the basis of the total amount of
>     harm or loss, the quantity of a substance involved, or some other measure of
>     aggregate harm, or if the offense behavior is ongoing or continuous in nature
>     and the offense guideline is written to cover such behavior.

USSG. § 3D1.2.[16]

Rodriguez was initially convicted of eleven counts. (Dkt. No. 486). District Judge Raymond L. Finch subsequently acquitted Rodriguez on two of these counts, Counts 3 and 4, after Rodriguez filed for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure (Dkt. No. 658). Of the nine counts that remained in place following the vacatur of Counts 3 and 4, seven are federal counts and two are territorial counts. The sentences Judge Finch imposed on the seven federal counts are as follows:

- **Count 1: 20 years**, for conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a);

- **Count 2: 20 years**, for attempted interference with commerce by threats of violence, in violation of 18 U.S.C. § 1951(a);

- **Count 6: Life**, for causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1);

- **Count 8: 15 years**, for attempted carjacking, in violation of 18 U.S.C. §2119(1);

- **Count 9: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A);

- **Count 10: 15 years**, for carjacking, in violation of 18 U.S.C. §2119(1); and

- **Count 11: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

(Dkt. No. 685 (Amended Judgment and Commitment Order)). The sentences Judge Finch imposed on the two territorial counts are as follows:

- **Count 5: Life**, for felony murder in the first degree, in violation of 14 V.I.C. § 922(a)(2); and

- **Count 7: 15 years and a fine of $50,000**, for unauthorized use of a firearm during a crime of violence, in violation of 14 V.I.C. § 922(a)(2).

---

[16] Rodriguez was sentenced on January 28, 2009 (Dkt. No. 682). The sentencing manual in effect at that time contained virtually identical language.

(Dkt. No. 575 (Judgment and Commitment Order on Territorial Counts)). Judge Finch specified that the territorial counts are to run consecutive to the federal counts and consecutive to one another, and that they are to be served after the term of imprisonment on the federal counts. (Dkt. No. 575 at 1; Dkt. No. 685 at 3). Judge Finch also specified that federal Counts 1, 2, and 8 are to run consecutively to one another. (Dkt. No. 685 at 3).

There is no question that the counts the Court vacates here—Counts 6 and 9—are interdependent with the seven other counts. At minimum, the counts "involve the same victim and the same act or transaction" under Section 3D1.2(a)—namely, the carjacking, robbery, and murder of a police officer. USSG § 3D1.2(a). Accordingly, the sentencing-package doctrine requires that Rodriguez be resentenced *de novo* on the seven remaining counts: Counts 1, 2, 5, 7, 8, 10, and 11.

## IV.    CONCLUSION

In view of the foregoing, the Court will vacate Counts 6 and 9 and will schedule, by separate Order, a resentencing hearing to address the seven remaining counts. The Court will otherwise deny Rodriguez's Motion to Vacate, and will adopt Magistrate Judge Cannon's R&R as modified herein.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 18, 2023

_____/s/_____
WILMA A. LEWIS
District Judge